### WM. LEFFLER AND WIFE v. R. DUNVILLE ET AL.

**Ejectment—Title of Plaintiff.**

> In ejectment, the plaintiff can recover only on the strength of his own title.

#### APPEAL FROM WEBSTER CIRCUIT COURT.

#### April 17, 1874.

OPINION BY JUDGE PETERS:

On May 19, 1869, appellants, Leffler and wife, instituted an action against Dunville to recover the one-half of 757 acres of land in Webster County, formerly Hopkins, less 200 acres then in possession of P. Mount, for the one-half of which they sued him.

They allege in their petition that George Noble, the grandfather of Mrs. Leffler, died intestate, and the owner of a tract of land containing about 4,215 acres, situated in the county of Webster, the boundary of which they set forth in their petition; that he left five children to whom said land descended; that in the year 1819 his said children and heirs caused said land to be divided and deeds of partition executed, and in the division lot "No. 4," containing 757 acres, was assigned to John Z. W. Noble, the father of Mrs. Leffler, but he had died previous to that time, intestate, leaving Mrs. Leffler and Emily W., who afterward married Providence Mounts, his only children and heirs at law to whom said 757 acres of land descended; that on April 4, 1839, appellant, Wm. Leffler, husband of Mary Ann, late Noble, and Providence Mounts, husband of said Emily W., acting for, and on behalf of themselves and wives, leased said land to the defendant, Richard Dunville, and took from him a bond as follows:

"For the rent of 12 acres of land on the improvement of the 757 acres known as the lot of John Noble's heirs on Deer creek, in Hopkins County, Ky., I promise to pay Wm. Leffler and Providence Mounts thirty-six dollars for the last three years' rent.

"The balance of the cleared land, the improving and fencing is considered compensation for the use of the land by the parties, the possession to be given to Mounts and Leffler after this season's crop is taken off, with this understanding: should either of the parties buy the other out, Mounts buy Dunville out, or Dunville buy Mounts out, in the lands, then the above to be void."

They allege that Dunville did not buy out Mounts, nor did he, after taking the crop of 1839 from said land, or at any time since, deliver the possession of said land to Mounts, or to any one for him, but had retained possession from the date of said bond to the time said suit was instituted, and continued to retain the possession to the present time; that about the year 1844 Emily Mounts was legally divorced from her husband, Providence Mounts, and restored to all the rights of an unmarried woman; and on April 26, 1854, she executed to Dunville a deed of release of all her interest in and to said land, save 200 acres, which deed is registered in the proper office, and a copy thereof is made a part of the petition; and on the same day Dunville executed to her a deed of release to 200 acres, part of said 757 acres, which is also registered in the proper office, and a copy thereof filed as a part of the petition.

They allege that by virtue of the deed from Mrs. Emily W. Mounts, he became the owner of her undivided interest in the said 757 acres of land, except the 200 acres which she retained, and which Dunville released to her; and after repeating the averment that Dunville had continuously occupied said land from the date of said lease, and was then in possession of it, they pray for a partition, and that one-half thereof, less the 200 acres released to Mrs. Mounts, be allotted and set apart to Mrs. Leffler.

Dunville, in his answer, admits that he was in possession of her portion of the 757 acres of land, mentioned and described in the petition as having been released to him by Mrs. Mounts, that is embraced in a deed from A. H. and J. W. Steed to him, bearing date November 29, 1853, but no more, and says he does not claim any part of said 757 acres not embraced in said deed; that said deed was made in compliance with, and in discharge of a bond executed by said Steeds to him, dated July 4, 1842, which he filed,

and makes a part of his answer; that immediately after the date of said bond he entered on, and took possession of the land described in the bond under the title of his vendors and had been in the peaceable possession of the land from that time till the present, his vendors having the superior title to the land, they being the heirs of John Steed, to whom it was patented, and who died intestate; and he filed a copy of said patent as a part of his answer.

He admits he executed the writing dated April 4, 1839, set out in the petition, and that he was then in possession of the 12 acres of land therein described without right, and which were then claimed by John Noble's heirs; that Providence Mounts, claiming to have married one of the heirs of said Noble, set up title to said 12 acres; that he executed said writing as evidence of an indebtedness to him of $36 for the rent for said land for the three years therein mentioned; that the plaintiff, Wm. Leffler, was not present at the time, and that he had, then, never seen him, nor did he know that he had any interest in said land.

In an amended answer, he avers that at the end of 1839 he abandoned the possession of the 12 acres, as he had bound himself in his covenant to Mounts to do, and it was unoccupied until after he made the contract to purchase the land from Steed's heirs, when he took possession under them; and from that time on he has claimed the land and held possession thereof continuously, notoriously, and adverse to all the world.

From the petition, the substance of which we have inserted, it appears that appellants do not claim title to the land deducible from the commonwealth; nor is it alleged in the petition that Dunville obtained the possession by means of his compromise with Mrs. Mounts; but they allege that in 1839, Leffler and Mounts, acting for and on behalf of themselves and wives, who were the legal owners of said land, leased the same to the defendant Dunville; and that from the date of said lease he had continuously occupied said land, and yet occupied the same; wherefore they pray the court to cause the land to be divided, etc. Basing their right to recover the land solely on the ground that by virtue of his lease, he became their tenant, and never having restored the possession to them, he was estopped from denying their title.

But this position is not insisted on in the ingenious argument of counsel for appellants, who now contend that he obtained the possession by virtue of what is termed a compromise with Mrs.

Mounts, who was the joint tenant with Mrs. Leffler, and having thus acquired possession, he can not dispute her title.

This position we propose briefly to examine.

In 1846 Mrs. Mounts came to Kentucky and entered upon a part of the 757 acres, which in the partition amongst Noble's heirs had been assigned to her father, or to his heirs.

As early as 1842 persons representing themselves to be the heirs of John Steed, the patentee, sold, by executory contract, the one-half of the 4,215 acre tract patented to said Steed, to Dunville; how much or what part of the tract Dunville took possession of under that contract does not appear from the evidence; but no one was then in the actual possession of the 757 acres under Noble.

In 1853 those persons claiming to be the heirs of John Steed conveyed 2,000 acres of said 4,215 acres to Dunville, and in 1854 he went to the house of Mrs. Mounts, with a writ of *habere facias* and the sheriff of the county, as some of the witnesses prove, to turn her out. But be that as it may, he was there at the date named, claiming to have the title to the land, and demanding the surrender to him of all the land Mrs. Mounts had in possession; and she refused to surrender to him; but she also claimed under Steed, as is shown by the proceedings in the Hopkins County court for partition of the land, filed by appellants, as an exhibit with their petition. But it must be assumed that she knew she had no title either documentary or possessory, or it would have been exhibited in this case. It is not alleged, nor does it appear from the evidence, that Mrs. Mounts entered to hold the land for herself and sister, or that Dunville entered under and as their tenant and was therefore estopped to deny their title. Under that state of case Mrs. Mounts, as the best thing she could do for herself, released all claim to the residue of the tract, and Dunville released to her his claim to 200 acres, including for her improvement; and Dunville entered on all the land he had not been in the possession of previously, not under the deed of release from Mrs. Mounts, but under his deed from the heirs of Steed, or of those claiming to be his heirs, and was so possessed at the institution of this suit, claiming adversely to all persons, and looking to no one for title.

It should be observed that the bond of Dunville to Mounts and Leffler dated April 4, 1839, filed by appellants as the evidence of their rights to recover, shows on its face that Dunville had only 12 acres of the land in possession; and by a decided preponderance

of the evidence it is shown that at the end of the term he abandoned the possession, neither Mounts nor Leffler being in the county.

But counsel for appellants say, by way of interrogatory, if the allegations of the petition are not sustained by the evidence, are they for that reason to fail, when, without those facts, they show a right to recover?

Without stopping to inquire whether they are entitled to recover by proof of facts totally at variance with those alleged, we answer, admit their position; having failed to make out the estoppel they can only recover by the strength of their own title. They have failed to show title in themselves by sufficient adversary possession, or by derivation from the patent; consequently they are not entitled to relief. If the title is not in Dunville or his representatives, it is in Steed's heirs.

Let the judgment be affirmed.

*M. C. Givens, for appellants.*

*Bush, D. H. Hughes, for appellees.*